989 So.2d 1288 (2008)
Timothy Scot BUCCINI, Appellant,
v.
Jacqueline Nicole SONARA, Appellee.
No. 4D08-755.
District Court of Appeal of Florida, Fourth District.
September 17, 2008.
Timothy Scot Buccini, Royal Palm Beach, pro se.
Mitchell Haymes of Law Offices of Glantz & Glantz, P.A., Plantation, for appellee.
*1289 SHAHOOD, C.J.
Appellant, Timothy Scot Buccini ("father"), appeals from the trial court's nonfinal Order Re: Temporary Custody of Minor Child and its Order Re: Defendant's [sic] Motion for Reconsideration/Clarification which were entered in the father's paternity action against appellee, Jacqueline Nicole Sonara ("mother"). We affirm in part, reverse in part, and remand for the entry of a visitation schedule.
The father filed a Petition to Determine Paternity and Other Related Relief. The mother filed her answer and counter petition. The father then filed an original Motion to Compel Visitation. The father thereafter filed his Emergency Motion to Compel Medical Records Access as well as a motion for judgment on the pleadings as to paternity. He then filed an Amended Motion for Temporary Custody of Minor Child or to Compel Visitation on October 22, 2007, and on October 23, 2007, the trial court entered its Judgment on the Pleadings as to Paternity in which it granted the motion and found that, as the parties agreed, the father was the legal and natural father of Alexander James Buccini who was born on August 3, 2007. A custody hearing was held on January 17, 2008. The trial court entered the Order Re: Temporary Custody of Minor Child on January 25, 2008, which is the subject of this appeal. On February 4, 2008, the father filed his Motion for Reconsideration/Clarification which the trial court denied without a hearing on February 6, 2008. This order was also attached to the Notice of Appeal but not named therein.
The child was born with an enlarged heart and a narrowing aorta which necessitated open heart surgery at the end of October 2007. The father learned about the surgery when the cardiologist called him. The mother did not tell the father that the child needed surgery. When the mother was deposed, she talked about a lot of doctor visits which the father did not know about. After the father found out about the surgery, he and his mother showed up at the hospital after calling around to find out the medical arrangements.
The father testified that since his son's birth on August 3, 2007, he has seen his son twice at the hospital, once when the child was born and once when the child had surgery; three times at the mother's house and once at a deposition. The mother has not allowed him to see the child thereafter.
When he visited at the mother's home, she was present as well as their son's grandparents, the mother's brothers and sisters, and nurses. He has never been permitted to be alone with his son. The mother has always been present. He has asked many times for unsupervised visits and she has always said no. The only reason she ever gave was that she is breastfeeding their son.
The mother has not made any allegations against the father in his presence. He denies any reason he would present a danger to his child or give the court concern for the child's safety in his care. There is no reason why the child can't leave the mother's house. The father lives alone in a townhouse with two bedrooms. He has a crib in the second bedroom, clothes and a stroller for the child. Photos of all the things he has gotten for the baby were shown to the court. The mother has not seen the things he has for the child but she knew he had a crib.
The mother then testified. Their child has been in her care since birth but she does desire the father to be involved in her son's life. "I would like him to spend time with his son, learn how to take care of him *1290 properly while I'm with him, gradually, until the next 18 years he has a relationship with his son." She stated that she has not denied the father access. She has concerns for him taking him alone such as the child's safety and his health and overall well-being. She has asked the father to have his car seat inspected which he said was unnecessary. The crib he got has bumpers which are against the rules for preventing Sudden Infant Death Syndrome (SIDS).
The mother asked that the court set a reasonable visitation schedule which would initially take place in the presence of the mother until the father takes a parenting course to satisfy the court that he understands how to care for the child properly. She asked for a social custody investigation and once it is accomplished, that the father be given an extended visitation schedule.
The court first stated that the father didn't have to take a parenting course nor did the mother. The father has to call before he goes to visit and the mother has to let him come whenever he wants. The father has to gradually work up to it, the trial court stated, but eventually he is going to take his child for unsupervised visitation.
The trial court's order denied the Father temporary custody but granted his motion which seeks to establish reasonable visitation. It held: "The Father's visitation shall take place at the Mother's residence or at such other place as agreed to by the parties. When the child is weaned the parties should mediate additional visitation."
The father filed a Motion for Reconsideration. He requested that "reasonable visitation" be further clarified "as the parties' inability to reach an agreement as to what is reasonable was one of the primary reasons" the motion was filed. He asks for a specific visitation schedule. Furthermore, the father asserts that he has no way of knowing when or if the child is weaned because the mother withholds information from him and it is unlikely she will affirmatively contact him. She could, the father argues, breastfeed until the child is a toddler which is well beyond the normal accepted breastfeeding period, therefore, denying access to the father. The trial court summarily denied this motion.
"The trial court exercises broad discretion in making a child custody determination, and its decision is reviewed for a clear showing of an abuse of discretion." Castillo v. Castillo, 950 So.2d 527, 528 (Fla. 4th DCA 2007). "Decisions affecting child custody require a careful consideration of the best interests of the child." Id. (quoting Andrews v. Andrews, 624 So.2d 391, 392 (Fla. 2d DCA 1993)). "Despite a conflict in the evidence, an appellate court will not disturb the trial court's custody decision unless there is no substantial competent evidence to support that decision." Artuso v. Dick, 843 So.2d 942, 944 (Fla. 4th DCA 2003) (quoting Adair v. Adair, 720 So.2d 316, 317 (Fla. 4th DCA 1998)).
We hold there was substantial, competent evidence to support the ruling of the trial court regarding custody and affirm as to this ruling.
With respect to visitation, although the trial court properly granted the father visitation and tried to account for the mother's breastfeeding of the child, the trial court did not account for the difficulties the father testified that he had in arranging times for visitation. The trial court did allow for visitation in a place other than the mother's residence. However, it did not specifically say that the mother could not deny visitation if the *1291 father wanted to meet with the child outside the mother's home. The mother could very well say it was not "reasonable" and refuse to meet elsewhere. The father testified to problems with the mother's family during his visits to the house. We hold the trial court abused its discretion in not setting a visitation schedule based upon the father's work schedule and the feeding and napping schedule of the child. The mother does not work so her schedule revolves around the child's. Furthermore, such visitation should not necessarily be at the mother's home each time.
The father should also be allowed to question the child's pediatrician to learn from him/her whether the child is still breastfeeding or is able to take a bottle so that he will know when to ask for mediation to adjust visitation to include overnight visits.
We accordingly reverse and remand with directions to the trial court to enter a specific visitation schedule. We affirm as to all other issues raised without further discussion.
Affirmed in part; Reversed in part, and Remanded for Entry of Visitation Schedule.
POLEN and FARMER, JJ., concur.