*657
 
 HAZOURI, J.
 

 Shannon Winters (“Mother”) appeals the court’s award of ultimate responsibility to Matthew Brown (“Father”) for their minor child’s health care, and specifically, their minor child’s vaccinations. Father cross appeals the court’s award of substantial timesharing to Mother. We affirm both provisions of the trial court’s order.
 

 While the parties were never married, Mother and Father have a minor child together. When differing religious beliefs resulted in disagreement over the minor child’s health care, Father petitioned the court to establish paternity and each party requested ultimate responsibility over health care, religious, and educational issues.
 

 Mother is a chiropractor and a proponent of holistic medicine. A tenet of her religious beliefs is that God has provided the human body with an innate immune system that enables the body to heal itself. Mother believes that anything introduced into the body to prevent disease or treat illness is against the will of God. Specifically, Mother opposes vaccinations. Accordingly, pursuant to section 1003.22(5)(a), Florida Statutes (2007), Mother obtained an exemption for the minor child from the immunization requirement to attend public school.
 

 Conversely, Father desires that the minor child receive traditional medical care, including well baby exams, blood draws, urinalysis, and vaccinations. The court held three hearings to determine responsibility for the minor child’s health care where multiple experts testified concerning the effectiveness of vaccinations. Mother also testified regarding her religious beliefs, medical care of the minor child, and their parent-child relationship.
 

 A trial court’s determination as to which parent is to have the ultimate authority over a minor child’s immunizations will be upheld if it is supported by competent, substantial evidence.
 
 See McGrath v. Mountain,
 
 784 So.2d 607, 608 (Fla. 5th DCA 2001). An appellate court will not substitute its judgment for that of the trial court.
 
 See id.
 
 (citing
 
 Lonergan v. Estate of Budahazi
 
 669 So.2d 1062 (Fla. 5th DCA 1996)).
 

 While courts have consistently overturned restrictions on exposing a child to a parent’s religious beliefs and practices, they make an exception where there is “a clear, affirmative showing that these religious activities will be harmful to the child.”
 
 Mesa v. Mesa,
 
 652 So.2d 456, 457 (Fla. 4th DCA 1995) (citation omitted). In the instant case, the court determined that
 

 The issue ... is not one of simply exposing the minor child to the mother’s religious beliefs and practices, it involves an issue that could cause physical and serious harm to the minor child. When parents cannot agree, the court is called upon to break the impasse, and that decision must be made in the best interests of the minor child.
 

 Following conflicting expert testimony
 

 [1]
 

 the court determined that it was in the
 
 *658
 
 best interests of the minor child to award Father ultimate responsibility to make decisions regarding the minor child’s health care and vaccinations. We affirm the trial court’s decision because it was supported by competent, substantial evidence.
 
 See McGrath,
 
 784 So.2d at 608.
 

 Next, we turn to Father’s cross-appeal where he contends that the trial court erred in awarding substantial time-sharing to Mother. An appellate court reviews a trial court’s child custody determination for an abuse of discretion.
 
 See Buccini v. Sonara,
 
 989 So.2d 1288, 1290 (Fla. 4th DCA 2008) (citing
 
 Castillo v. Castillo,
 
 950 So.2d 527, 528 (Fla. 4th DCA 2007)). “Decisions affecting child custody require a careful consideration of the best interests of the child.”
 
 Id.
 
 (citation omitted). An appellate court will not disturb the trial court’s custody decision unless there is no substantial, competent evidence to support the decision.
 
 Id.
 
 (citations omitted). A trial court has wide discretion, and that “discretion is abused only where no reasonable man would take the view adopted by the trial court.”
 
 Artuso v. Dick,
 
 843 So.2d 942, 944 (Fla. 4th DCA 2003) (citations omitted).
 

 The determination of the best interests of the child is made by evaluating over twenty factors affecting the welfare and interests of the child. § 61.13(3), Fla. Stat. (2008). “While a trial court need not address each of these factors independently, a trial court must make a finding that the time-sharing schedule is in the child’s best interests.”
 
 Kelly v. Colston,
 
 32 So.3d 186, 187 (Fla. 1st DCA 2010) (citations omitted). The requisite findings must either be stated on the record or set out in the order.
 
 Clark v. Clark,
 
 825 So.2d 1016, 1017 (Fla. 1st DCA 2002). A trial court’s ultimate finding that an award of primary residential custody to one parent is in the best interests of a child is sufficient to sustain the award so long as there is substantial, competent evidence in the record that permits the court to properly evaluate the relevant factors.
 
 Id.
 
 (citations omitted).
 

 In the instant case, the trial court considered several factors in section 61.13(3), Florida Statutes. Ultimately, the court determined that “[a]fter consideration of all these factors and the findings by the court, the court hereby determines and orders that the mother shall have the substantial timesharing with the minor child.” As the court’s determination was supported by substantial, competent evidence in the record, we affirm the trial court’s award of substantial timesharing to Mother.
 

 Affirmed.
 

 POLEN and CIKLIN, JJ., concur.
 

 [1]
 

 . Dr. Mobeen Rathore testified:
 

 Vaccinations are very safe, very effective. Children who are not vaccinated are at increased risk for problems with infections. Some of these diseases that can be sort of postponed, if you will, can have a much worse outcome.... [C]hildren who do not get vaccinated not only are at increased risk themselves, studies have indicated that they put other children at risk in the schools and where they play.
 

 Dr. Kristen Walker testified that “generally it is better to do [vaccines] on schedule because the antibody titers and the strength of the immunity to that disease would be better." Conversely, Dr. Lawrence Palevsky testified that "one in five children in this country ... are suffering from some form of neurodevel-
 
 *658
 
 opmental disorder, so we have to question whether the vaccines play a role in bringing toxic materials into the brain or even impairing the protection that children have with the blood-brain barrier.” He also concluded that "it’s less harmful for a child
 
 not
 
 to be vaccinated than it is for a child to be vaccinated.” (emphasis added.)